



# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>HIGH SPEED MUSIC, INC.,<br>　　　　　　　　　　Debtor(s). | Bk. No. SV 06-11676 MT<br>Bk. No. SV 06-11674 MT<br>Bk. No. SV 06-11675 MT<br>Bk. No. SV 06-11399 MT |
| In re:<br><br>BETTER BANDWIDTH, INC.,<br>　　　　　　　　　　Debtor(s). | Chapter 7<br><br>Adv. No. SV 07-01224 MT<br>Adv. No. SV 07-01232 MT |
| In re:<br>TYJ CONSULTING, INC.,<br>　　　　　　　　　　Debtor(s). | Adv. No. SV 07-01237 MT<br>Adv. No. SV 07-01238 MT<br>Adv. No. SV 07-01239 MT |
| In re:<br>DATABASE STORAGE AND DESIGN, INC.,<br>　　　　　　　　　　Debtor(s). | **MEMORANDUM OF DECISION AND ORDER RE: ORDER TO SHOW CAUSE (1) WHY SANCTIONS SHOULD NOT BE IMPOSED ON MOVANTS/DEFENDANTS HIGH SPEED MUSIC, INC.; BETTER** |
| In re:<br>FOCUS ADVERTISING, INC.,<br>　　　　　　　　　　Debtor(s). | **BANDWIDTH, INC.; DATABASE STORAGE AND DESIGN, INC.; and COUNSEL BRUCE M. GREENFIELD;** |
| GERALD H. DAVIS, Chapter 7 Trustee of the Bankruptcy Estate of Solutions Media, Inc.,<br>　　　　　　　　　　Plaintiff(s),<br>v.<br><br>MICHAEL ALEXANDER, ERIC KIRKLAND AND WILLIAM WRIGHT, et. al.,<br>　　　　　　　　　　Defendant(s). | **and (2) WHY BRUCE M. GREENFIELD SHOULD NOT BE REFERRED TO THE STATE BAR DISCIPLINARY PANEL**<br><br>Date:　December 5, 2007<br>Time:　10:00 a.m.<br>Place:　Courtroom 302 |

## I. **INTRODUCTION**:

On October 16, 2007, this court issued an Order to Show Cause why sanctions should not be imposed against Respondents High Speed Music, Inc.; Better Bandwidth, Inc.; TYJ Consulting, Inc.; Database Storage and Design, Inc.; Focus Advertising, Inc.; ("Movants") and counsel Bruce M. Greenfield ("Greenfield") and why Bruce M. Greenfield should not be referred to the state bar disciplinary panel ("OSC"). This OSC stemmed from numerous bankruptcy filings and removals of a San Diego state court action by Greenfield and Movants (collectively referred to as "Respondents") from 2005 to present. It appears that the bankruptcy filings and removals, many of which resulted in *sua sponte* remands, were filed to cause unnecessary delay to the San Diego state court trial and constituted improper abuse of the bankruptcy process. The OSC seeks sanctions against Respondents. A hearing on the OSC was held on December 5, 2007. As explained below, Respondents repeatedly used the bankruptcy court to disrupt and delay state court discovery and trial with no legitimate basis to file bankruptcy or any removal action. Their conduct was an egregious abuse of the bankruptcy process.

## II. **FACTS**:

The Original Bankruptcy Filing and Superior Court Action:

On October 30, 2000, Solutions Media, Inc., d.b.a. Spinerecords.com ("Solutions Media") filed a voluntary chapter 7 petition in the United States Bankruptcy Court for the Southern District of California ("Southern District"), and Gerald H. Davis ("Davis") was appointed as chapter 7 trustee. On October 16, 2002, Davis filed a Complaint to Avoid Fraudulent Conveyances in the San Diego Superior Court for the State of California, case no. GIC 798121, (the "Superior Court action") and a jury trial was scheduled to

1    commence on October 1, 2007 at 8:30 a.m. in the San Diego Superior Court. The

2    Complaint names approximately twenty defendants, including Better Bandwidth, Inc.;

3    High Speed Music, Inc.; TYJ Consulting, Inc.; Database Storage and Design, Inc.; and

4    Focus Advertising, Inc.

5        The Initial Bankruptcy Filings:

6        From June 2005 to February 2006, Greenfield filed four bankruptcy cases in the

7    Central District of California ("Central District") for entities that are related to or involved

8    in the Superior Court action ("initial bankruptcy filings"). Specifically, these cases were:

9    (1) In re Database Storage & Design, Inc., case. no. SV 05-14420 MT, filed on June 28,

10   2005 and dismissed on December 12, 2005; (2) In re High Speed Music, Inc., case no.

11   SV 05-14558 MT, filed on July 5, 2005 and dismissed on September 26, 2005; (3) In re

12   Better Bandwidth, Inc., case no. SV 05-14640 MT, filed on July 5, 2005 and dismissed

13   on September 26, 2005; and (4) In re TYJ Consulting, Inc., case no. SV 05-14641 MT,

14   filed on July 5, 2005 and dismissed on October 12, 2005.

15       The Subsequent Bankruptcy Filings:

16       From August 21, 2006 to September 27, 2006, Greenfield refiled and/or filed five

17   bankruptcy cases for entities that are related to or involved in the Superior Court action

18   ("subsequent bankruptcy filings"). Specifically, these cases were: (1) In re Focus

19   Advertising, Inc., case no. SV 06-11399 MT, filed on August 21, 2006; (2) In re

20   Database Storage and Design, Inc., case no. SV 06-11675 MT, filed on September 27,

21   2006; (3) In re High Speed Music, Inc., case no. SV 06-11676 MT, filed on September

22   27, 2006; (4) In re Better Bandwidth, Inc., case no. SV 06-11677 MT, filed on

23   September 27, 2006; and (5) In re TYJ Consulting, Inc., case no. SV 06-11674 MT,

24   filed on September 27, 2006. Davis filed motions for relief from the automatic stay

25   (action in non-bankruptcy forum) in the subsequent bankruptcy filings, and this court

26

1    issued orders granting relief from stay.

2        The Removals:

3        On June 28, 2005, Greenfield filed a notice of related action and notice of

4    removal, adv. no. 05-01399 MT, which this court remanded on November 16, 2005.

5        From February 1, 2006 to September 18, 2007, Greenfield filed six notices of

6    related action and notices of removal in various adversary proceedings in the Southern

7    District attempting to move the Superior Court action to the bankruptcy court, all of

8    which were stricken by the Southern District bankruptcy court.

9        From September 19, 2007 to October 15, 2007, Greenfield filed five notices of

10   related action and notices of removal in various adversary proceedings in the Central

11   District before this court ("Central District removals"), attempting to move the Superior

12   Court action to this court. Specifically, the notices of related action and notices of

13   removal were filed in the following adversary proceedings: (1) adv. no. SV 07-01224

14   MT, filed on September 19, 2007 and remanded on October 1, 2007; (2) adv. no. SV

15   07-01232 MT, filed on October 11, 2007 and remanded on October 15, 2007; (3) adv.

16   no. SV 07-01237, filed on October 15, 2007 and remanded on October 15, 2007; (4)

17   adv. no. SV 07-01238 MT, filed on October 15, 2007 and remanded on October 15,

18   2007; and (5) adv. no. SV 07-01239 MT, filed on October 15, 2007 and remanded on

19   October 15, 2007.

20       The OSC:

21       On October 16, 2007, this court issued the OSC and set the matter for hearing

22   on December 5, 2007. In the OSC, this court set the deadline for response and

23   oppositions for November 9, 2007 and set the deadline for replies for November 21,

24   2007. On November 2, 2007, Davis filed a Declaration in Support of Imposition of

25   Sanctions and filed a copy of attorney fees incurred as a result of Respondents'

26

- 4 -

1   actions. On November 7, 2007, Davis filed Declaration in support of OSC. On

2   November 8, 2007, Davis filed a Declaration of Robert Steele in Support of Order to

3   Show Cause, stating that Robert Steele, special counsel for Davis, incurred $9,240.00

4   in September 2007 preparing for the Superior Court action trial that was delayed as a

5   result of Respondents' filings of removals.

6        On November 7, 2007, Respondents filed an Opposition to the Order to Show

7   Cause ("November 7, 2007 Opposition"). The November 7, 2007 Opposition stated

8   that Respondents "attempted numerous times in 'good faith' to request the court(s) to

9   order this matter to binding arbitration by numerous notices of removal to preserve the

10  rights of appeal by the defendant(s)." Respondents also reasoned that since "most

11  removals filed prior to commencement of trial were remanded 'sua sponte,'" it did not

12  delay trial. Finally, Respondents stated: "However, in the event that the court deems it

13  necessary and appropriate to award sanctions in the sum of $148,850.00 (as requested

14  by the trustee's counsel), this sum certainly is a sufficient deterrent for any similar [ ]

15  conduct (if determined by the court to be improper conduct) to eliminate any and all

16  necessity for any further penalties or any further action by the state bar disciplinary

17  panel."

18       On November 15, 2007, Greenfield filed a Request for Judicial Notice of Hearing

19  re: Judgment by Default, requesting that this court refrain from duplicate sanctions

20  since Judge Meyers of U.S. Bankruptcy Court in the Southern District is holding a

21  hearing on December 13, 2007 regarding sanctions relating to Respondents' actions in

22  the Southern District. On November 21, 2007, Greenfield filed a Request for Judicial

23  Notice re: Statutory Limit Upon Sanctions, whereby Greenfield argued that California

24  Code of Civil Procedure §177.5 creates a maximum limit of $1,500 on sanctions and

25  that "the foregoing statute is relevant, as Section 105 has no specific sanction

26

1   provisions and Section 105 only refers to general court awarded powers."

2       On November 21, 2007, Greenfield filed a Request for Continuance of OSC

3   Hearing, requesting a continuance until after the December 13, 2007 hearing in the

4   Southern District. Greenfield stated that the Southern District adversary proceeding,

5   adv. no. 07-90318, was filed six months prior to the OSC and "supersedes [the] OSC

6   hearing." Greenfield argues that the OSC should be continued and taken off calendar

7   after judgment in adv. 07-90318 in the Southern District because duplicate sanctions

8   and state bar referrals twice for the same conduct is appealable error. On November

9   28, 2007, this Court issued an Order Denying Motion to Continue the OSC Hearing

10  stating that the OSC hearing will be heard on December 5, 2007 as originally

11  scheduled.

12      On November 29, 2007, Greenfield filed a second Request for Continuance of

13  the Order to Show Cause Hearing, stating that he is unavailable on December 5, 2007

14  because he "must attend the meeting of creditors in a Chapter 13 case...'previously'

15  continued from November 21, 2007...which is good cause for non-appearance on

16  December 5, 2007." No declaration and/or evidence was attached to the motion. On

17  November 29, 2007, this court issued an Order Denying Motion to Continue the OSC

18  Hearing, finding that Greenfield's Request for Continuance filed on November 29, 2007

19  "fails to establish good cause for non-attendance of the OSC hearing."

20      On December 3, 2007, Greenfield filed a third Request for Continuance of the

21  Order to Show Cause Hearing, stating that he is unavailable on December 5, 2007

22  because he agreed to attend a meeting of creditors in a chapter 13 case in case no. SV

23  07-13812 GM. The court determined that Greenfield's meeting of creditor was

24  scheduled for 9:00 a.m. in a building adjacent to the courthouse, and the Order to Show

25  Cause hearing was scheduled for 10:00 a.m. Thus, on December 4, 2007, this court

26

- 6 -

1  issued an Order Denying Motion to Continue OSC and notified Greenfield that his

2  Request for Continuance was denied and that he must appear at the OSC hearing.

3        On December 5, 2007, a hearing was held on the OSC hearing. Greenfield

4  appeared on behalf of Respondents, and Gary Rudolph ("Rudolph") appeared on

5  behalf of Davis. Greenfield stated that his motive for filing the bankruptcies and

6  removals was to attempt to establish standing by reviving the corporations' suspended

7  status. He also stated that the court clerk called him and told him that the judge was

8  not inclined to grant his motions to vacate default. Considering this court's procedures,

9  this court found that statement to be not credible. When asked why he did not put any

10  of his reasoning in his opposition/response, Greenfield stated that he did not get a

11  chance and that he thought that he would receive a continuance. This court also found

12  that argument to be unpersuasive because Greenfield had weeks to file a detailed

13  opposition or response since this court issued the OSC six weeks prior to the OSC

14  hearing. Greenfield then argued that he requested the San Diego Superior Court to

15  consider his motion for arbitration prior to the trial, but the San Diego Superior Court

16  refused to entertain that motion. Greenfield stated that he removed the Superior Court

17  action to this court because the Superior Court refused to grant his arbitration motion

18  and he hoped that the bankruptcy court would assist with this binding arbitration issue.

19  This court questioned Greenfield's reasoning behind the removal, stating that the

20  bankruptcy court does not act as a court of appeal for the state superior court. The

21  court also asked why Greenfield would think that the bankruptcy court would review the

22  superior court when relief from stay was granted and the removal was denied.

23  Greenfield responded that it was a core proceeding and that he wanted to be consistent

24  by having all of the corporations/Respondents make the same claim. Greenfield also

25  stated that he felt his removal filings were like an "tacit objection" to the trial.

26

- 7 -

1        Rudolph argued that all Greenfield was attempting to do was reargue

2  disappointment he had with the state court judgment against his client. Rudolph also

3  stated that he has spent years trying to get the Superior Court action to trial, and that

4  trial was initially set for July 1, 2005. Rudolph stated that the trial was continued three

5  times due to Greenfield's filings. Further, this court found that Greenfield sent seventy-

6  three (73) faxes of the same document to Rudolph. Greenfield explained that he was

7  frustrated because Rudolph did not respond to his emails. Rudolph further explained

8  that Greenfield refused to talk to Rudolph on the phone and that Greenfield sent

9  Rudolph over two hundred and seventy-five (275) emails.

10

11  **DISCUSSION**:

12       Due Process:

13        This court has satisfied due process by issuing the OSC a month and a half prior

14  to the sanction hearing and clearly describing the conduct leading to sanctions and the

15  grounds for sanctions. Due process requires that "prior to sanctioning an attorney, a

16  court must provide the party to be sanctioned with notice of and some opportunity to

17  respond to the charges." *In re DeVille*, 361 F.3d at 547. An order proposing to impose

18  sanctions should notify "the person charged both of the particular alleged misconduct

19  and of the particular disciplinary authority under which the court is planning to proceed."

20  *Id.* at 548. This court issued the OSC on October 16, 2007 and set the OSC hearing for

21  December 5, 2007. The OSC clearly described Respondents' filings of multiple

22  bankruptcies and removals. The OSC also addressed the possibility of sanctions

23  pursuant to 28 U.S.C. §1447(c), F.R.B.P. Rule 9011, and 11 U.S.C. §105(a).

24  Therefore, due process has been satisfied.

25       Opposition/Responses by Respondents:

26

1    Respondents' opposition filed on November 7, 2007 is unpersuasive.

2    Respondents argue in their November 7, 2007 opposition that because the removals

3    were remanded "*sua sponte*," there was no delay to the trial.  However, the evidence

4    shows that Respondents' numerous bankruptcy filings and notice of removals delayed

5    trial originally scheduled for October 1, 2007.  Additionally, even if there had been no

6    delay to the trial date, Respondents' actions increased costs of litigation and unduly

7    harassed opposing party.  Respondents also argue that the court's refusal to grant the

8    removals does not constitute a lack of merit or bad faith.  However, in this court's

9    October 1, 2007 remand motion in adversary proceeding SV 07-01224 MT, this court

10   clearly found Respondents' actions to be "bad faith."  The fact that Respondents

11   continued to file an additional four removals after that order and finally ceased filing

12   notices of removal only after this court issued the OSC shows that Respondents' had

13   knowledge of and intentionally proceeded with their bad faith conduct.  Thus,

14   Respondents' opposition is not persuasive.

15   Respondents' Request for Judicial Notice re: Judgment by Default filed on

16   November 15, 2007 is irrelevant to our present OSC.  Respondents argue that if Judge

17   Meyers in the Southern District awards sanctions, this court's sanctions will be a

18   duplicate of that.  This court's OSC and sanctions relate directly to Respondents'

19   conduct in this court and does not refer to or relate to Respondents' actions in the

20   Southern District.  Just because Respondent has chosen to engage in egregious

21   conduct in multiple courts does not prevent this court from sanctioning them for conduct

22   in this court.  Therefore, there are no duplicate sanctions.

23   Finally, Respondents' Request for Judicial Notice re: Statutory Limit Upon

24   Sanctions filed on November 21, 2007 is also irrelevant to our present OSC.

25   Respondent argues that California Code of Civil Procedure §177.5 creates a maximum

26

1   limit of $1,500 on sanctions.  California Code of Civil Procedure §177.5 states that "a

2   judicial officer shall have the power to impose reasonable money sanctions, not to

3   exceed fifteen hundred dollars ($1,500), notwithstanding any other provision of law,

4   payable to the court, for any violation of a lawful court order by a person, done without

5   good cause or substantial justification."  First, this statute is inapplicable because the

6   OSC and sanctions do not involve any violation of court order.  Second, federal law and

7   not state law applies to our current sanctions.  *In re Larry's Apartment, LLC.,* 249 F.3d

8   832, 838 (9th Cir. 2001) holds that federal law and not state law applies for the purpose

9   of imposing sanctions in bankruptcy court.  The reasoning is that: "federal courts must

10  be in control of their own proceedings and of the parties before them, and it is almost

11  apodictic that federal sanction law is the body of law to be considered in that regard."

12  *Id.*  Further, "when an attorney appears before a federal court, he is acting as an officer

13  of that court, and it is that court which must judge his conduct," *Cord v. Smith,* 338 F.2d

14  516, 524 (9th Cir. 1996).  Additionally, "[i]f anything, the need for uniform and

15  expeditious handling of bankruptcy cases make it even more important that federal, not

16  state, sanction rules apply."  *In re Larry's Apartment,* 249 F.3d at 838.  Thus, California

17  Code of Civil Procedure §177.5 and its limit on sanctions are not applicable to our

18  present OSC.

19      <u>28 U.S.C. §1447(c):</u>

20      Respondents can be sanctioned pursuant to 28 U.S.C. §1447(c) for expenses

21  and costs incurred as a result of the removal.  28 U.S.C. §1447(c) states: "An order

22  remanding the case may require payments of just costs and any actual expenses,

23  including attorney fees, incurred as a result of the removal."  *In re DeVille,* 361 F.3d

24  539, 546 (9th Cir. 2003) holds that "28 U.S.C. §1447(c) allows a court discretion to

25  grant attorneys' fees and costs for an improper removal."  A finding of bad faith is not

26

1   required to award attorney fees under 28 U.S.C. §1447(c). *See Moore v. Permanente*

2   *Medical Group, Inc.,* 981 F.2d 443, 445 (9th Cir. 1992). A fee award under 28 U.S.C.

3   §1447(c) is not punitive but is designed to reimburse unnecessary litigation costs. *Id.*

4   However, the 28 U.S.C. §1447(c) sanctions "must be tied to specific removals," and the

5   bankruptcy court "must apply the statutory standard of 'incurred as a result of removal'

6   and tie each dollar of the compensatory award to a removal, applying a removal-by-

7   removal analysis." *In re DeVille,* 361 F.3d at 546.

8         Respondents' removal filings in 2005 and from September 2007 to October 2007

9   in this court constituted improper removals. In *In re DeVille,* the defendants and

10   defendants' attorney filed a series of bankruptcy filings and notices of removal of the

11   state court action to the bankruptcy court in order to delay the state court trial. 280 B.R.

12   483, 486-487. In the *DeVille* case, the attorney filed two bankruptcies and two

13   removals, with a third bankruptcy and third removal filed in pro per by one of the

14   defendants. *Id.* That court found the removals to be improper. *Id.* In our present

15   cases, Respondents filed a total of nine bankruptcy cases and five notices of removal

16   before this court, and this number excludes similar filings in the Southern District. This

17   court promptly remanded the removals, with some removals being remanded the same

18   day the removals were filed. This court's October 1, 2007 order remanding the removal

19   filed by Greenfield on September 19, 2007, adv. no. 07-1224 MT, specifically found the

20   removal to be "filed in bad faith". Subsequent to the October 1, 2007 remand order,

21   Greenfield continued to file four notices of removals, attempting to remove the same

22   Superior Court action to the bankruptcy court, even after this court found the previous

23   removal to be filed in bad faith. It was only after this court issued the OSC when

24   Respondents finally ceased filing additional notice of removals. Respondents' removals

25   were improper, especially since Respondents filed additional removals with notice of

26

1  and intent to continue their conduct.  Thus, Respondents will be sanctioned and

2  ordered to reimburse attorney fees and expenses incurred as a result of the removals

3  pursuant to 28 U.S.C. §1447(c).

4      F.R.B.P. Rule 9011:

5      Respondents can also be sanctioned pursuant to F.R.B.P. Rule 9011.  Under

6  F.R.B.P. Rule 9011(b):

7      By presenting to the court (whether by signing, filing, submitting, or later
advocating) a petition, pleading, written motion, or other paper, an attorney or

8  unrepresented party is certifying that to the best of the person's knowledge,
information, and belief, formed after an inquiry reasonable under the

9  circumstances,–(1) it is not being presented for any improper purpose, such as
to harass or to cause unnecessary delay or needless increase in the cost of

10  litigation; (2) the claims, defenses, and other legal contentions therein are
warranted by existing law or by nonfrivolous argument for the extension,

11  modification, or reversal of existing law or the establishment of new law; (3) the
allegations and other factual contentions have evidentiary support after a

12  reasonable opportunity for further investigation or discovery; and (4) the denials
of factual contentions are warranted on the evidence, or if specifically so

13  identified, are reasonably based on a lack of information or belief.

14  F.R.B.P. Rule 9011(c)(1)(B) states: "On its own initiative, the court may enter an order

15  describing the specific conduct that appears to violate subdivision (b) and directing an

16  attorney, law firm, or party to show cause why it has not violated subdivision (b) with

17  respect thereto."  Pursuant to F.R.B.P. Rule 9011(c)(2), sanctions are limited "to what is

18  sufficient to deter repetition of such conduct or comparable conduct by others similarly

19  situated."  F.R.B.P. Rule 9011(c)(3) specifies that in the order, "the court shall describe

20  the conduct determined to constitute a violation of this rule and explain the basis for the

21  sanction imposed."  *In re DeVille* held that the imposition of Rule 11 sanctions requires

22  only a showing of objectively unreasonable conduct, and a finding of bad faith is not

23  required.  361 F.3d at 548.  Moreover, "[i]n determining whether sanctions are

24  warranted under Rule 9011(b), [the court] must consider both frivolousness and

25  improper purpose on a sliding scale, where the more compelling the showing as to one

26

1  element, the less decisive need be the showing as to the other." *In re Silberkraus*, 336

2  F.3d 864, 870 (9th Cir. 2003).

3      In our present cases, Greenfield's conduct in filing multiple bankruptcies and

4  numerous removals in the Central District constituted improper conduct to harass,

5  cause unnecessary delay, and to increase costs of litigation pursuant to F.R.B.P. Rule

6  9011(b)(1).  Greenfield engaged in forum shopping by filing bankruptcies and removals

7  in the Central District after his attempts in the Southern District were unsuccessful.

8  Moreover, Respondents had no intent to follow through on their bankruptcies and were

9  abusing the bankruptcy system.  Not only was Greenfield's conduct "objectively

10  unreasonable," it constituted bad faith.  In *In re Chinichian*, 784 F.2d 1440, 1444-46

11  (9th Cir. 1986), the Ninth Circuit found that filing of a bankruptcy petition to frustrate and

12  impede a state court litigation to be bad faith.  Comparatively, Greenfield's conduct is

13  more egregious because he filed multiple bankruptcies and removals in different forums

14  in an attempt to delay and impede the Superior Court action, especially since he

15  continued to file four additional notices of removals even after this court ruled the

16  September 19, 2007 removal to have been filed in bad faith.  Further, Greenfield's

17  argument in his November 7, 2007 Opposition that the trial was not delayed because

18  the removals were remanded *sua sponte* is unpersuasive.  Just because Davis took

19  action to get the removed cases remanded and the court *sua sponte* granted remands

20  in a timely fashion does not mean that Greenfield's egregious conduct did not constitute

21  bad faith.  Therefore, since only a showing of unreasonable conduct is required for

22  sanctions under F.R.B.P. 9011 and Greenfield's actions constituted bad faith, this court

23  can issue F.R.B.P. 9011 sanctions against Greenfield.

24      §105(a)/Inherent Authority:

25      Respondents can be sanctioned pursuant to 11 U.S.C. §105(a).  Under 11

26

- 13 -

1  U.S.C. §105(a), "[t]he court can issue any order, process, or judgment that is necessary

2  or appropriate to carry out the provisions of this title."  The court's inherent power can

3  be used as an alternative authority for compensatory awards of attorney fees and costs.

4  *In re DeVille*, 361 F.3d at 544.  The court can assess attorney's fees "when a party has

5  acted in bad faith, vexatiously, wantonly, or for oppressive reasons," "when fraud has

6  been practiced upon...or...the very temple of justice has been defiled," or "when a party

7  shows bad faith by delaying or disrupting the litigation or by hampering enforcement of

8  a court order."  *Id*. at 544-545.  Additionally, a federal court is not forbidden to sanction

9  bad faith conduct by means of an inherent power even if that conduct could be

10  sanctioned under the state or rules.  *Id*. at 545.  When there is bad faith conduct that

11  could be adequately sanctioned under other rules, the court should ordinarily rely on

12  those rules rather than the inherent power, but if neither the statute nor the rules are up

13  to the task, the court may rely on its inherent power.  *Id*.  The limitation is that

14  imposition of a sanction via the court's inherent authority requires a finding of bad faith.

15  *Id*. at 548.

16      As discussed above, Respondents' conduct in filing multiple bankruptcies and

17  removals, with no intent to complete the bankruptcies, constituted bad faith and

18  improper abuse of the bankruptcy process.  Moreover, Respondents continued to file

19  notices of removals in order to delay the Superior Court action even after this court put

20  Respondents on notice that such conduct constituted bad faith.  Respondents' actions

21  delayed and disrupted the Superior Court litigation.  Thus, this court will use its inherent

22  authority to award sanctions where sanctions are not covered by other statutes and as

23  an alternative measure of sanctions to other statutes.

24      Sanctions Imposed:

25          Initial Filings and Removal:

26

1       Between June and August 2005, Respondents filed the following bankruptcy

2 cases in this court: (1) case no. SV 05-14420 MT, (2) case no. SV 05-14558 MT, (3)

3 case no. SV 05-14540 MT, and (4) case no. SV 05-14047 MT. Respondents also filed

4 a notice of removal on June 28, 2005, adv. no. SV 05-01399 MT. In the December 12,

5 2005 dismissal order in case. no. SV 05-14420 MT, this court awarded $10,000 in

6 attorney fees and costs against Database Storage and Design, Inc. only. Davis' time

7 sheets, reflecting attorney fees and costs incurred as a result of Respondents'

8 conducts, are attached to the Declaration of Gary B. Rudolph in Support of Imposition

9 of Sanctions filed on November 2, 2007 ("Davis time sheets").

10       From July 5, 2005 to July 29, 2005, Davis incurred a total of $6,688 as reflected

11 in the Davis time sheets. This amount was for attorney fees and costs relating to

12 Respondent's removal action, adv. no. 05-01399 MT, and the expenses were incurred

13 as a result of the removal. Moreover, the removal was part of a scheme to delay the

14 Superior Court action in bad faith. Thus, the court grants $6,688 in sanctions to be paid

15 to Davis and/or his attorneys pursuant to 28 U.S.C. §1447(c) since these expenses

16 were incurred as a result of the removal and alternatively pursuant to 11 U.S.C.

17 §105(a).

18       From August 8, 2005 to August 29, 2005, Davis incurred a total of $10,332.17 as

19 reflected in the Davis time sheets. This amount was for attorney fees and costs relating

20 to Respondent's removal action, adv. no. 05-01399 MT, and the expenses were

21 incurred as a result of the removal. Moreover, the removal was part of a scheme to

22 delay the Superior Court action in bad faith. Thus, the court grants $10,332.17 in

23 sanctions to be paid to Davis and/or his attorneys pursuant to 28 U.S.C. §1447(c) since

24 these expenses were incurred as a result of the removal and alternatively pursuant to

25 11 U.S.C. §105(a).

26

1    From September 7, 2005 to September 30, 2005, Davis incurred a total of

2  $11,649.17 as reflected in the Davis time sheets. This amount was for attorney fees

3  and costs relating to Respondent's removal action, adv. no. 05-01399 MT, and the

4  expenses were incurred as a result of the removal. Moreover, the removal was part of

5  a scheme to delay the Superior Court action in bad faith. Thus, the court grants

6  $11,649.17 in sanctions to be paid to Davis and/or his attorneys pursuant to 28 U.S.C.

7  §1447(c) since these expenses were incurred as a result of the removal and

8  alternatively pursuant to 11 U.S.C. §105(a).

9    From October 13, 2005 to October 31, 2005, Davis incurred a total of $6,183.21

10  as reflected in the Davis time sheets. This amount was for attorney fees and costs

11  relating to hearings in the Respondent's bankruptcy and removal actions, motion to

12  dismiss the cases, motion for relief from automatic stays, and motion for remand. This

13  total can be tied to the removal since these motions had to be filed as a result of the

14  removal action, SV 05-01399 MT, pursuant to 28 U.S.C. §1447(c). Alternatively, 11

15  U.S.C. §105(a) can be used to justify the amounts found to be not directly tied to the

16  removal because the initial filings were done in bad faith in an attempt to delay litigation

17  with no intent to follow through the bankruptcy process. Thus, the court grants

18  $6,183.21 in sanctions to be paid to Davis and/or his attorney pursuant to 28 U.S.C.

19  §1447(c) and alternatively, 11 U.S.C. §105(a).

20    From November 1, 2005 to December 25, 2005, Davis incurred a total of

21  $549.41 as reflected in the Davis time sheets. This amount was for attorney fees and

22  costs related to motions to dismiss and other matters relating to the initial bankruptcy

23  filings. 11 U.S.C. §105(a) can be used to justify this amount because the initial filings

24  were done in bad faith in an attempt to delay litigation with no intent to following through

25  the bankruptcy process. Thus, the court grants $549.41 in sanctions to be paid to

26

1 | Davis and/or his attorney pursuant to 11 U.S.C. §105(a).

2 |      Therefore, the court grants sanctions in the total amount of $\underline{\$35,401.96}$ to be

3 | paid to Davis and/or his attorney as against Respondents for the initial filings and

4 | removal.  This amount shall be reduced to **$\underline{\$25,401.96}$** to take account of the earlier

5 | sanction of $10,000 in the December 12, 2005 order.  However, the December 12,

6 | 2005 sanction is amended to include Greenfield to be jointly and severally liable for the

7 | initial $10,000 in sanctions.

8 |      Subsequent Filings:

9 |      Between August 2006 and October 2007, Respondents filed the following

10 | bankruptcy cases: (1) case no. SV 06-11399 MT, (2) case no. SV 06-11675 MT, (3)

11 | case no. SV 06-11677 MT, and (4) case no. SV 06-11674 MT.  In addition,

12 | Respondents filed five removal actions: (1) adv. no. SV 07-01224 MT, (2) adv. no. SV

13 | 07-01232 MT, (3) adv. no. SV 07-01237 MT, (4) adv. no. SV 07-01238 MT, and (5) SV

14 | 07-01239 MT.

15 |      From September 1, 2006 and September 28, 2006, Davis incurred a total of

16 | $979.94 as reflected in the Davis time sheets.  This amount was for attorney fees and

17 | costs relating to motions to dismiss and matters relating to the subsequent bankruptcy

18 | filings.  11 U.S.C. §105(a) can be used to justify this amount because the subsequent

19 | filings were done in bad faith in an attempt to delay litigation with no intent to following

20 | through the bankruptcy process.  Thus, the court grants $979.94 in sanctions to be paid

21 | to Davis and/or his attorney pursuant to 11 U.S.C. §105(a).

22 |      From March 19, 2007 to March 26, 2007, Davis incurred a total of $4,947.00 as

23 | reflected in the Davis time sheets.  This amount was for attorney fees and costs related

24 | to motions for relief from stay and other matters relating to the subsequent bankruptcy

25 | filings.  11 U.S.C. §105(a) can be used to justify this amount because the subsequent

26 |

1  filings were done in bad faith in an attempt to delay litigation with no intent to following

2  through the bankruptcy process. Thus, the court grants $4,947.00 in sanctions to be

3  paid to Davis and/or his attorney pursuant to 11 U.S.C. §105(a).

4        From April 2, 2007 to April 26, 2007, Davis incurred a total of $14,121.98 as

5  reflected in the Davis time sheets. This amount was for attorney fees and costs related

6  to motions for relief from stay, motions for dismissal, and other matters relating to the

7  subsequent bankruptcy filings. 11 U.S.C. §105(a) can be used to justify this amount

8  because the subsequent filings were done in bad faith in an attempt to delay litigation

9  with no intent to following through the bankruptcy process. Thus, the court grants

10  $14,121.98 in sanctions to be paid to Davis and/or his attorney pursuant to 11 U.S.C.

11  §105(a).

12        From June 1, 2007 to June 30, 2007, Davis incurred a total of $9,880.90 as

13  reflected in the Davis time sheets. This amount was for attorney fees and costs related

14  to motions for relief from stay, appeal, and other matters relating to the subsequent

15  bankruptcy filings. 11 U.S.C. §105(a) can be used to justify this amount because the

16  subsequent filings were done in bad faith in an attempt to delay litigation with no intent

17  to following through the bankruptcy process. Thus, the court grants $9,880.90 in

18  sanctions to be paid to Davis and/or his attorney pursuant to 11 U.S.C. §105(a).

19        From September 26, 2007 to September 30, 2007, Davis incurred a total of

20  $3,359.24 as reflected in the Davis time sheets. This amount was for attorney fees and

21  costs relating to Respondents' removal action, adv. no. 07-01224 MT, and the

22  expenses were incurred as a result of the removal. Moreover, the removal was part of

23  a scheme to delay the Superior Court action in bad faith. Thus, the court grants

24  $3,359.24 in sanctions to be paid to Davis and/or his attorneys pursuant to 28 U.S.C.

25  §1447(c) since these expenses were incurred as a result of the removal and

26

1    alternatively pursuant to 11 U.S.C. §105(a).

2    In September 2007, special counsel for Davis, Robert Steele, incurred a total of

3    $9,240.00 as stated in the Declaration of Robert Steele in Support of Order to Show

4    Cause filed on November 8, 2007.  This amount was for attorney fees and costs

5    incurred in preparation for the Superior Court action trial, scheduled in September

6    2007.  The trial was postponed due to the filings of removal notices by Respondents,

7    and Steele will need to re-prepare for the continued trial date.  This total can be tied to

8    the removal because Robert Steele incurred these fees as a result of the removal

9    action, adv. SV 07-01224 MT, pursuant to 28 U.S.C. §1447(c).  Alternatively, 11 U.S.C.

10   §105(a) can be used to justify the amounts found to be not directly tied to the removal

11   because the subsequent filings and removals were done in bad faith in an attempt to

12   delay litigation with no intent to follow through the bankruptcy process.  Thus, the court

13   grants $9,240.00 in sanctions to be paid to Robert Steele pursuant to 28 U.S.C.

14   §1447(c) and alternatively, 11 U.S.C. §105(a).

15   Therefore, the court grants sanctions in the total amount of $42,499.06,

16   $9,240.00 to be paid to Robert Steele and the remaining amount to be paid to Davis

17   and/or his attorney as against Respondents for the subsequent filings and removal.

18   F.R.B.P. Rule 9011 Sanctions:

19   This court can choose to grant sanctions as against Greenfield to be paid to the

20   court pursuant to F.R.B.P. Rule 9011.  However, this court finds the attorney fees to be

21   paid to Davis and Robert Steele to be sufficient deterrent against Respondents, so no

22   Rule 9011 sanctions will be issued.

23

24   **DISPOSITION**:

25   After considering the responses, the court record, and the oral arguments at the

26

- 19 -

1  hearing,

2      **IT IS HEREBY ORDERED** that this court grants sanctions as against

3  Respondents jointly and severally in the amount of **$67,901.02**, $9,240.00 to be paid to

4  Robert Steele and the remaining amount to be paid to Davis and/or his attorney

5  pursuant to 28 U.S.C. §1447(c) and 11 U.S.C. §105(a).

6      **IT IS FURTHER ORDERED** that this court amends the December 12, 2005

7  sanction order to include Greenfield to be jointly and severally liable for the initial

8  $10,000 in sanctions.

9      **IT IS FURTHER ORDERED** that this court will refer Greenfield to the state bar

10  disciplinary committee for any further disciplinary actions.

11

12
    DATED: December 11, 2007
13

14                                        **MAUREEN A. TIGHE**
                                          United States Bankruptcy Judge
15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE BY MAIL

I certify that a true copy of this **ORDER** was mailed on ___DEC 1 1 2007___
to the parties listed below:

**Gary B Rudolph**
James Lewin
701 B St Ste 1000
San Diego, CA 92101

**Bruce M Greenfield**
520 So Sepulveda Blvd #404
Bel Air, CA 90049

**TYJ Consulting, Inc**
3860 Winford Drive
Tarzana, CA 91356

**Database Storage and Design Inc**
3860 Winford Drive
Tarzana, CA 91356

**Focus Advertising Inc**
3860 Winford Drive
Tarzana, CA 91356

**United States Bankruptcy Court**
Southern District of CA
Judge James Meyers
324 West "F" St.
San Diego, CA 92101

**Amy L Goldman**
221 N. Figueroa Street, Suite 1200
Los Angeles, CA 90012

**United States Trustee (SV)**
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

**Focus Advertising Inc**
3860 Winford Drive
Tarzana, CA 91356

**David R Hagen**
6320 Canoga Avenue, Suite 1400
Woodland Hills, CA 91367

**Better Bandwidth Inc**
3860 Winford Drive
Tarzana, CA 91356

**High Speed Music Inc**
3860 Winford Drive
Tarzana, CA 91356

**Superior Court of San Diego**
Judge Steven Denton
Dept. 73
330 West Broadway
San Diego, CA 92101

Dated:
        DEC 1 1 2007

_Amy Dominguez_
DEPUTY CLERK